214

Raimundo Sierra et al., Plaintiffs and Appellees, *v.* Salvador Vieta Puig et al., Defendants; Salvador Vieta Puig, Appellant.

Nos. 7870 and 7892. Argued June 20, 1939.—Decided March 6, 1940.

*Francisco González Fagundo* and *Antonio L. López* for appellant.
*Villamil & Santana Becerra* for appellees.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Six causes of action are alleged in the complaint herein claiming title to and possession of a piece of property, and, among other things, judgment is sought in the sum of $5,900 for damages.

On June 1, 1938, the plaintiffs sought to attach any balance remaining in favor of the defendant of the proceeds from the canes harvested and delivered by the latter to the central of The Eastern Sugar Corporation, the sum attached not to exceed $1,500. A writ of attachment having been issued upon the furnishing of a bond for $1,000 and notice thereof having been served on the defendant, the latter moved to set aside the writ of attachment and its return, among others, on the following grounds:

1. Because the order decreeing the atachment is null and void for its failure to comply with section 14 of the law to secure the judgments of March 1, 1902, that is, for the failure to summon the defendant or to hold the hearing as provided in said section.

2. Because the attachment is null since a thing that has not yet come into existence can not be the subject of attachment. There may be attached only property belonging to the defendant at the time of the attachment but not such as might result from a liquidation of transactions between two parties.

After a hearing on the motion, the court denied the same and granted the plaintiff five days to file a new bond. The defendant, feeling aggrieved, brought appeal No. 7870 in which he assigns as errors committed by the lower court the denial of the motion to set aside the attachment and the order by virtue whereof the attachment was levied.

The new bond was filed on June 20, 1938, and, upon being approved by the judge, the defendant filed a motion on the 27th of the same month to set the same aside on the following grounds:

(A) Because, as the attachment had been decreed on June 1, 1938, the bond ought to have contained a clause making it retroactive to the above date.

(B) Because the bond was signed only by Raimundo Sierra but not by the other co-plaintiffs.

(C) Because the bond is in favor of all the defendants and only property belonging to defendant Vieta has been attached.

(D) Because the statements made by the bondsmen are insufficient; for the reason that after stating that each one of them owns property worth more than $2,000 above all debts and liens they fail to swear that that is so exclusive of any property exempt from taxation, as it might happen that the bondsmen may have a homestead right on some of the properties described.

The lower court denied the above motion and defendant Vieta appealed. The number of the appeal filed is 7892.

On motion of the parties both appeals were heard and decided together.

It was error for the lower court to decree the attachment upon the filing of the complaint without notifying and summoning the other party to appear in court and submit any evidence that might be relevant.

It appears from the record that the complaint in the case at bar was filed on February 14, 1938, and that the motion to secure the effectiveness of the judgment was filed on June of the same year. No summoning or voluntary appearance of the defendant prior to the time when the attachment was sought and decreed appears from the record before us.

Section 3 of the law to secure the effectiveness of judgments, as amended by the act of April 13, 1936, reads as follows:

"None of the preceding remedies shall be decreed, unless an action is entered, and a petition praying for such remedy is made. The petition praying for any such remedy may be entered when the action is entered or at any stage of the proceedings before or after judgment. If security of judgment is prayed after the same has been rendered no bond shall be required."

As may be seen, all that the statute requires is the filing of a petition for attachment and that a complaint. be filed before or at the time of filing the same. It is not necessary to serve the defendant or to hear evidence. If the complaint and the allegations of the petition show sufficient legal grounds to justify the attachment, it is the duty of the court to decree the same. If after the levying of the attachment either of the litigants should file a motion in connection with said attachment—for instance, seeking its. modification or nullity, requesting a larger bond, or challenging the sufficiency or solvency of the bondsmen—it will be incumbent upon the mover, under section 14 of the law to secure judgments, to notify the other party so as give the latter an opportunity to appear in court to be heard and to intervene in the hearing of the evidence.

In *Madera* v. *Campillo, Judge,* 30 P.R.R. 156, the same question now raised by the appellant came up for determination. This court, through Mr. Justice Wolf, held as follows:

"As to the question of notice, we are convinced that it was not the idea of the Act of March 1, 1902, to require that an attachment be first notified to a debtor before issuance. If such notice were necessary the primary purpose of the law, namely, the security, might be defeated. Nowhere else that we know of does an attachment statute requires the previous notice to the debtor, though security to the debtor is frequently exacted. Both the English and Spanish texts in terms do not refer to the issuance of the attachment itself, but to a controversy arising out of 'allegations' in English and '*pre-*

*tensiones'* in Spanish. There is nothing to indicate an intention of a primary notice. It is true that in this case the attachment was not contemporaneous with the complaint, but issued after the answer; but there is nothing in the law that requires the attachment to issue immediately. On the contrary, the idea of the law is to make the judgment effective when rendered. We find no error of procedure."

It was not error for the court to decree the attachment without first serving notice on the defendant.

■■ Can the equity of a defendant in the hands of a sugar corporation resulting from the grinding of canes of the defendant be garnished?

The appellant maintains that it can not, on the ground that so long as a liquidation is not effected, the liquid proceeds sought to be attached has no actual existence; and because according to the provisions of the Code of Civil Procedure only property belonging to the defendant at the time of the attachment may be attached.

In *Diego Agüeros & Co. v. Heres,* 50 P.R.R. 511, and *Rodríguez v. Fontes, American R. R. Co., Int.,* 51 P.R.R. 648, it was held that salaries to accrue can not be attached; and in the former of these two cases it was said:

"The theory of the court must have been, and is, that there was nothing in existence which could have been reached by execution; that salaries to accrue are not things. Ordinarily the right of the debtor to his salary only arises after he has performed the services.

"The appelant maintains that there is nothing in the law to prohibit the attachment of future salaries and we agree. Nevertheless, as we have intimated before, ordinarily an execution or attachment only arises to cover a thing in existence."

In *Armour Fertilizer Works v. Ramírez,* 52 P.R.R. 521, there was raised the same question involved in the case at bar. The attachment was vacated by the very court that issued it, on the ground that the notice of the attachment was served by the secretary and not by the marshal, the court failing to pass upon the two other grounds for nullity, which were the same that are advanced in the present appeal. After

the appeal brought by the plaintiff and attaching creditor was heard, the order appealed from was reversed because "the only ground upon which he based his order dissolving the attachment did not exist." This court left the main question open by saying:

". . . . Whether the balance, which may result in favor of a cane grower on liquidation of a contract for agricultural advances and for the grinding of cane, is subject to garnishment is an important question which should be decided in the first instance by the district court after adequate argument. We shall not, of our own initiative and without the aid of counsel, pass upon it at this time."

In the case at bar, the point was decided in the first instance against the appellant who has assigned the same as error committed by the lower court. It is our duty to consider and finally determine the same.

The legal situation presented by the case at bar is to our judgment distinct from that of cases where it has been sought to attach future or not accrued salaries. A salary not yet accrued does not and can not actually exist until the services paid therewith have been performed. If the salaried employee should die before rendering the services, his heirs would not be entitled to make any claim, nor could his creditors attach anything.

In the case under consideration, there exist a crop-loan and cane grinding contract between defendant Vieta and The Eastern Sugar Corporation. Under said contract, with whose stipulations we are not acquainted, the defendant planted canes on the property claimed by the plaintiffs as belonging to them. At the time the attachment was levied upon any balance that might be left in favor of the defendant upon the liquidation of the crop-loan contract, the canes had already been harvested and delivered to the central and were being worked and turned into sugar. The canes actually existed and it is unquestionable that they could have been attached while in the possession of defendant Vieta, subject, of course, to any prior right which, under the law regulating

crop-loan contracts, might be vested in the central for the collection of its credits. Such attachment would amount to securing the judgment with any balance left to the colono after the sums due the central had been paid. The legal situation does not vary, must not vary, to our judgment, merely because the attachment had been levied after delivery of the canes to the central to be ground and turned into sugar and, finally, into cash. In either case, as there exists a crop-loan contract under which the colono is bound to deliver to the central any canes grown with the money advanced by it, the only thing that the creditor will be able to attach is any balance left to the colono, that is, any equity left, in canes or cash, after the central has collected the money advanced by it. We do not deem it necessary, for the validity of the attachment, that the arithmetical operation required for determining the exact amount of the balance in favor of the colono be made prior to the levying of the attachment. If this were a necessary requisite, it would likewise have to be concluded that it is impossible to attach any sum by way of interest that might accrue to a shareholder or partner without first winding up the corporation or partnership in order to be able to determine the assets of the debtor.

The relations between the central and the colono are to certain extent similar to those of partners between themselves. The central advances the money required for the planting and cultivation of the canes. The colono contributes with land and his work. It is the canes which, like the social capital, secures the refund of the capital to the central and of the fruits of his labor to the colono.

The interest of the colono in any balance left from the proceeds of the canes has a real and effective existence, the determination of the amount thereof depending upon a simple arithmetical operation. On his death the same passes to his heirs, or to his creditors, if any, similarly to any other tangible property.

Section 246 of the Code of Civil Procedure provides:

"All goods, chattels, *moneys, and other property,* both real and personal, *or any interest therein* of the judgment debtor, not exempt by law, and all property and right of property, seized and held under attachment in the action, are liable to execution. Shares and interest in any corporation or company, and debts and credits, and all other property, both real and personal, or any interest in any real or personal 'property, *and · all other property not capable of manual delivery,* may be attached on execution, *in like manner as upon writs of attachment.* . . . Until a levy, property is not affected by execution." (Italics ours.)

We agree with appellant that "only property belonging to defendant at the time of the attachment or that in the hands of. a third party but owned by him can be attached." We agree also with his contention that the provisions of section 246, *supra,* are applicable to attachments to secure judgments.

The interest or share in the proceeds from the canes that might belong to the defendant is, unquestionably, an interest or right of property subject to a writ of execution of judgment. Such writ of execution can not affect the property of a debtor until an attachment is levied. The attachment of property not capable of immediate manual delivery—such as any favorable balance from a liquidation not yet made—must be carried out in the same manner as in writs of attachment to secure a judgment.

█ Section 2 of the law to secure judgments, after setting forth the rules governing the method of securing judgments, says:

"(h) With respect to cases not provided for in the preceding rules, the court shall, in its discretion and in accordance with equity, adopt such measures as it may deem proper to secure the effectiveness of the judgment."

Section 10 of the aforesaid act provides that the prohibition to alienate personal property and the attachment thereon shall be effected by depositing the personal property in ques-

tion with the court, or with the person designated by it, under the responsibility of the plaintiff.

In the case before us the marshal notified the agent of the central of his having attached the sum of $1,500 out of the net balance in favor of the defendant Vieta of the proceeds in the hands of the central, of which sum neither the central nor the defendant may dispose; and he further notified it "that it must retain as the agent of the aforesaid corporation the liquid proceeds actually in its possession or prospective belonging to defendant Salvador Vieta Puig up to the aforesaid sum of $1,500 which it shall deliver to the undersigned marshal as soon as the said canes shall have been liquidated."

It is our opinion that the attachment in the instant case was lawfully levied and that it was not error for the court below to uphold the validity of its order.

■ Let us discuss now the errors assigned in the second appeal:

(A) It is alleged by defendant and appellant that the bond furnished by the plaintiff on June 20, 1938, ought to have included a clause to make the same retroactive to the 1st of the same month and year when the attachment was levied.

There is no justification for the objection. Under the terms of the bond which is transcribed in the record, after mention is made of the filing of the complaint, the prayer thereof, the issuance of the writ of attachment and the requirement of a bond to secure it, the principles and the sureties bind themselves as follows:

"THEREFORE, WE, (all the plaintiffs) as principals and Cándido A. Martínez and Emilio Gándara, as sureties, freely and spontaneously, bind ourselves pointly and severally to answer for $1,000, as the amount of this bond or any part thereof if necessary, to cover any damages that might be caused to defendants, Salvador Vieta Puig, Cruz Fontanez Lorenzano and Manuela Rodríguez García, *as the result of the attachment levied as required by law.*" (Italics ours.)

We think that the so-called *nunc pro tunc* clause required by the appellant is unnecessary. We have no doubt that defendant Vieta might recover, under the terms of the bond, for any damages suffered by him between the 1st and the 20th of June, "as the result of the attachment levied on the 1st of the said month of June, 1938.

█ (B) It is alleged that the bond is subscribed only by Raimundo Sierra but not by the other coplaintiffs.

Plaintiff Raimundo Sierra is the father of the other plaintiffs, and all of them allege to be co-owners of the property claimed by them. The complaint and the motion for attachment were filed in behalf and for the benefit of all and each of them. The bond must be considered as having been executed by Raimundo Sierra in behalf and for the benefit of all of the plaintiffs. The latter would anyhow be answerable to the defendant, without the necessity of executing any bond, for an unjustified attachment of his property.

Plaintiff Raimundo Sierra appears to be the owner of one-half undivided joint interest in the property, which he acquired during his marriage with the mother of the other plaintiffs. In such capacity the plaintiff would be entitled to one-half the sum of $5,900 claimed in the complaint and would also be entitled to have the judgment secured as to any share therein that might fall to him.

The omission of the signature of the other plaintiffs is not a defect prejudicial to the interests of the defendant, nor is it, in our judgment, sufficient to invalidate the bond and to set aside the attachment. If the bondsmen are solvent, the defendant is fully secured under the bond in the form it has been executed. However, as the signatures of the other plaintiffs might have been omitted through an involuntary mistake, and although the other plaintiffs are ready to subscribe the bond, it is our opinion that the case should be remanded to the lower court so that the latter may require said plaintiffs to subscribe to the bond and state that

the same shall become effective as of June 1, 1938, when the attachment was executed.

■ (C) The execution of the bond in favor of all of the defendants, while the attachment was levied only against defendant Vieta, does not void the obligation. The two co-defendants whose property has been attached surely will not suffer at all as the result of the attachment of Vieta's property. The latter is secured by the whole amount of the bond.

■ (D) It appears from the transcript of the evidence that on August 5, 1938, and at the request of the defendants, there appeared in the lower court the two bondsmen to be examined as to their financial solvency.

Surety Emilio Gándara testified that he and his two brothers are undivided joint owners in equal shares of two estates, with an area of 138 and 18 cuerdas, respectively, both ·lying in Cidra; that he resides in Caguas; that the estates are recorded and the taxes thereon paid in the name of the three brothers; that the two estates are worth between twenty and twenty-five thousand dollars; that the estate having 138 cuerdas is assessed at $8,000 and that of 18 cuerdas at $720; that he owns besides four houses in Cidra, one of which is a baker shop for which he refused an offer of $5,000; that he has no debts, except that he secured a note to bearer for $5,000 with the two rural estates, but that such note has not been negotiated and is still in his possession.

Cándido Martínez, the other surety, testified that he owns property worth more than $2,000, including a house in Caguas burdened with a $4,838.62 mortgage to the Home Owners Loan Corporation; that said house is assessed at $9,415.18; that he owns other property, two houses, one of them valued at $4,000 and the other at $1,000.

The defendant had an ·opportunity to examine the sureties as to any homestead right that might be claimed by them on the estates of which they claimed to be owners, but failed to avail himself of it. The omission in the oath of

the sureties of the phrase "exclusive of any property exempt from execution," was not only supplied by the waiver of the defendant of his right to examine the sureties in this respect, but the same is immaterial and harmless as against the defendant because, as appears from the record, the sureties appear to be fully solvent and the owners of several estates, regarding all of which they can not claim any homestead right.

For the foregoing reasons, the order made by the lower court on August 26, 1938, and appealed from under No. 7870, must be affirmed; and likewise the order made on August 10, 1938, and appealed from under No. 7892, must be affirmed, with the only modification that the case shall be remanded to the lower court so that the bond be also subscribed by the other plaintiffs who failed to do so originally, by virtue of which the principals and sureties shall become bound as from June 1, 1938, when the attachment was levied.